**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000011
23-SEP-2024
10:16 AM
Dkt. 132 SO**

NO. CAAP-20-0000011

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

KAUAʻI SPRINGS, INC., Petitioner-Appellant-Appellee, v.
PLANNING DEPARTMENT OF THE COUNTY OF KAUAʻI;
PLANNING COMMISSION OF THE COUNTY OF KAUAʻI, and
COUNTY OF KAUAʻI, Respondents-Appellees-Appellants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 18-1-0192 (JKW)

SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, and Wadsworth and Guidry, JJ.)

In this secondary appeal, Respondents-Appellees-
Appellants Planning Department of the County of Kauaʻi (**Planning
Department**), Planning Commission of the County of Kauaʻi
(**Planning Commission**), and County of Kauaʻi (collectively
**Appellants**) appeal from the Second Amended Final Judgment
(**Judgment**), entered in favor of Petitioner-Appellant-Appellee
Kauaʻi Springs, Inc. (**Kauaʻi Springs**), on January 7, 2020, by the
Circuit Court of the Fifth Circuit (**Circuit Court**).[1] Appellants
also challenge the Circuit Court's Findings of Fact, Conclusions
of Law, Decision and Order (**FOFs/COLs/Order**), entered on
November 1, 2019. The FOFs/COLs/Order "reverse[d] and vacate[d]"
the Planning Commission's Findings of Fact, Conclusions of Law,
and Decision and Order (**Planning Commission FOFs/COLs/Order**),
issued on November 26, 2018.

---

[1] The Honorable Kathleen N.A. Watanabe pesided.

On appeal, Appellants contend that: (1) "the Circuit Court's [COLs] 5, 6, 7 and 8 are clearly wrong"; (2) "the Circuit Court's [COLs] 4, 9, 10, 11 and 12 are clearly erroneous for lack of sufficient factual support"; and (3) "the Circuit Court's [FOFs] 19, 22, 23, 25, 27, and 28 are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."

For the reasons discussed below, we vacate and remand.

## I. Background

This agency appeal has a long and complex procedural history. The Hawaiʻi Supreme Court's published opinion in Kauai Springs, Inc. v. Planning Commission of the Cnty. of Kauaʻi, 133 Hawaiʻi 141, 324 P.3d 951 (2014), recounts the factual and procedural background of the case through early-2014.

In brief, Kauaʻi Springs filed an application with the Planning Department in 2006 for a **Use Permit**, a **Class IV Zoning Permit**, and a **Special Permit** to continue operating a spring water bottling facility on a parcel of land within the County of Kauaʻi that was zoned for agricultural use (collectively, the **Permits**). The Planning Commission denied Kauaʻi Springs' application. Kauaʻi Springs appealed to the Circuit Court. On September 17, 2008, the Circuit Court issued findings of fact, conclusions of law, and an order reversing in part and vacating in part the Planning Commission order. The Circuit Court ruled that Kauaʻi Springs had met its burden for the Permits and ordered that they be issued. On September 23, 2008, the Circuit Court entered final judgment in favor of Kauaʻi Springs and against the Planning Commission.

The Planning Commission appealed from the Circuit Court's judgment to this court. On April 30, 2013, this court published an opinion vacating the Circuit Court's judgment and remanding the case to the Planning Commission with instructions. See Kauai Springs, Inc. v. Planning Commission of the County of Kauai, 130 Hawaiʻi 407, 312 P.3d 283 (App. 2013).

The supreme court granted certiorari and issued its published opinion on February 28, 2014. See Kauai Springs, 133

Hawaiʻi at 141, 324 P.3d at 951.  The supreme court concluded that this court erred in certain respects, but affirmed this court's judgment to the extent it vacated the Circuit Court's judgment.  Id. at 179-181, 324 P.3d at 989-91.  Specifically, the supreme court held that the Planning Commission's findings of fact and conclusions of law were not wrong, and its decision to deny the Permits was thus not arbitrary and capricious.  Id. at 179-80, 324 P.3d at 989-90.  However, the supreme court remanded the case to the Planning Commission with instructions to clarify its findings and conclusions in the underlying case consistent with the supreme court's opinion.  See id. at 181, 324 P.3d at 991.

On remand, the Planning Commission referred the case to a hearings officer to "[r]eceive evidence consistent with the . . . [s]upreme [c]ourt [o]pinion to supplement the record" and to "[p]rovide an amended decision and order, based on the additional evidence, back to the Planning Commission for its consideration."  On May 31, 2016, the hearings officer conducted a contested case hearing during which the Planning Department and Kauaʻi Springs agreed that the Planning Commission had "reopened a contested case hearing[,]" under which the Commission "was not limited to clarifying its findings and conclusions" and could receive "further evidence . . . to permit [Kauaʻi Springs] to establish that it presently meets the requirements for issuance of the Permits, including public trust and the respective requirements under each permit regime."[2]  Subsequent to the hearing, the record remained open for limited purposes; the contested case was closed on September 12, 2017.

On November 26, 2018, the Planning Commission entered the Planning Commission FOFs/COLs/Order, which denied Kauaʻi Springs' application for the Permits.

---

[2]     We note that the supreme court did not instruct the Planning Commission to reopen the proceeding to take additional evidence and to determine anew whether Kauaʻi Springs "presently," i.e., following the submission and consideration of the additional evidence, met the requirements for issuance of the Permits.  That said, it does not appear that the Planning Commission was legally precluded from doing so, as long as its new or amended findings and conclusions clarified its prior findings and conclusions consistent with the supreme court's opinion.

On December 21, 2018, Kauaʻi Springs filed a notice of appeal in the Circuit Court seeking appellate review of the Planning Commission FOFs/COLs/Order pursuant to Hawaii Revised Statutes (**HRS**) § 91-14(b) (Supp. 2019). Following briefing and a hearing, on November 1, 2019, the Circuit Court entered its FOFs/COLs/Order, which vacated the Planning Commission FOFs/COLs/Order and affirmatively directed the Planning Department to grant Kauaʻi Springs' application for the Permits. On January 7, 2020, the Circuit Court entered the Judgment.

## II.  Discussion

In their first and second points of error, Appellants contend that the Circuit Court's COLs 5 through 8 are clearly wrong, and that COL 4 and COLs 9 through 12 are factually unsupported. In this secondary appeal, we apply the standards in HRS § 91-14(g) to the Planning Commission's decision to determine whether the Circuit Court was right or wrong in vacating the decision.[3/] Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 120, 424 P.3d 469, 475 (2018).

Appellants argue that the Circuit Court erred in concluding that Kauaʻi Springs satisfied the public trust requirements for issuance of the Permits. We thus briefly review those requirements before addressing the challenged COLs.

## A.  The Public Trust Doctrine

The supreme court recently summarized the scope and purposes of the public trust doctrine as follows:

> "The public trust doctrine applies to all water resources without exception or distinction." [In re Water Use Permit Apps. (Waiāhole I)], 94 Hawaiʻi [97,] 133, 9 P.3d [409,] 445[ (2000)].
>
> We have recognized four types of water uses, or "purposes," protected by the state water resources trust:

---

[3/]    In their third point of error, Appellants also challenge several of the Circuit Court's FOFs. A circuit court reviewing an agency's decision and order in a contested case under HRS § 91-14 acts as an appellate court; it does not review the evidence in the agency record to make its own findings of fact. Sierra Club v. Bd. of Land & Nat. Res., 154 Hawaiʻi 264, 284, 550 P.3d 230, 250 (App. 2024), cert. granted, No. SCWC-22-0000516, 2024 WL 3378462 (July 11, 2024). We decline to review the Circuit Court's FOFs and instead analyze the issues presented by Appellants' arguments.

(1) maintenance of waters in their natural state; (2) domestic water use, in particular, drinking water; (3) the exercise of traditional and customary Native Hawaiian water rights; and (4) the reservation of water enumerated by the Water Code. Kauai Springs, 133 Hawaiʻi at 172, 324 P.3d at 982 (first citing Waiāhole I, 94 Hawaiʻi at 136-37, 9 P.3d at 448-50; and then citing In re Waiʻola[ O Molokaʻi, Inc.], 103 Hawaiʻi [401,] 431, 83 P.3d [664,] 694[ (2004)]). We rejected, on the other hand, private commercial uses as not protected by the public trust. Waiāhole I, 94 Hawaiʻi at 138, 9 P.3d at 450. We have acknowledged the public trust "may allow grants of private interests in trust resources under certain circumstances"; nonetheless, it has "never been understood to safeguard rights of exclusive use for private commercial gain." Id.

Surface Water Use Permit Applications, Integration of Appurtenant Rts. & Amends. to Interim Instream Flow Standards, 154 Hawaiʻi 309, 339, 550 P.3d 1167, 1197 (2024).

In Kauai Springs, the supreme court explained the duties of the State in enforcing these public trust principles, as well as the burden on the permit applicant, in the context of this case. The court stated in part:

> When an agency is confronted with its duty to perform as a public trustee under the public trust doctrine, it must preserve the rights of present and future generations in the waters of the state." Waiāhole I, 94 Hawaiʻi at 141, 9 P.3d at 453. . . . The agency measures the proposed use under a "reasonable and beneficial use" standard, which requires examination of the proposed use in relation to other public and private uses. Id. at 161, 9 P.3d at 473. The agency must apply a presumption in favor of public use, access, enjoyment, and resource protection. Id. at 142, 154 n. 59, 9 P.3d at 454, 466 n. 59.
>
> The agency is duty-bound to place the burden on the applicant to justify the proposed water use in light of the trust purposes. [In re Contested Case Hearing on Water Use Permit Application Filed by] Kukui (Molokai), Inc., 116 Hawaiʻi [481,] 490, 174 P.3d [320,] 329[ (2007)]. Permit applicants must demonstrate their actual needs, and, within the constraints of available knowledge, the propriety of draining water from public streams to satisfy those needs. Waiāhole I, 94 Hawaiʻi at 162, 9 P.3d at 474. If there is a reasonable allegation of harm to one of the uses protected by the public trust, then the applicant must demonstrate that there is no harm in fact or that any potential harm does not preclude a finding that the requested use is nevertheless reasonable and beneficial. Kukui (Molokai), Inc., 116 Hawaiʻi at 499, 174 P.3d at 338.
>
> The applicant is "obligated to demonstrate affirmatively that the proposed use will not affect a protected use, in other words, the absence of evidence that the proposed use would affect a protected use is insufficient." Waiʻola O Molokaʻi, 103 Hawaiʻi at 442, 83 P.3d at 705 (emphases in original). See also Kukui (Molokai), Inc., 116 Hawaiʻi at 509, 174 P.3d at 348 ("The Water Commission's conclusion that 'no evidence was

5

presented' . . . that the protected use would be adversely affected erroneously shifted the burden of proof.")

Additionally, the applicant must demonstrate the absence of a practicable alternative water source.  Waiāhole I, 94 Hawaiʻi at 161, 9 P.3d at 473.  The applicant's proposed use must be denied if the applicant does not show that there is no practicable alternative water source.  Id. at 161 n. 65, 9 P.3d at 473 n. 65.  "Such a requirement is intrinsic to the public trust."  Id.; see also Kukui (Molokai), Inc., 116 Hawaiʻi at 496, 174 P.3d at 335 ("The agency cannot fairly balance competing interests in a scarce public trust resource if it renders its decision prior to evaluating the availability of alternative sources of water.").

Lastly, if the impact is found to be reasonable and beneficial, then in light of the cumulative impact of existing and proposed diversions on trust purposes, the applicant must implement reasonable measures to mitigate this impact.  Waiāhole I, 94 Hawaiʻi at 143, 161, 9 P.3d at 455, 473.

When an agency or other deciding body considers an application for permits under circumstances that requires the deciding body to perform as a public trustee to protect a public trust resource, the agency or other deciding body must make findings sufficient to enable an appellate court to track the steps that the agency took in reaching its decision.  Kilauea Neighborhood Ass'n[ v. Land Use Comm'n], 7 Haw. App. [277,] 230, 751 P.2d [1031,] 1034[ (1988)] . . . .

. . . .

Under the foregoing principles and purposes of the public trust, it is manifest that a government body is precluded from allowing an applicant's proposed use to impact the public trust in the absence of an affirmative showing that the use does not conflict with those principles and purposes.  Therefore, the applicant is "obligated to demonstrate affirmatively that the proposed use will not affect a protected use," Waiʻola O Molokaʻi, 103 Hawaiʻi at 442, 83 P.3d at 705 (emphases omitted).  In other words, "the absence of evidence that the proposed use would affect a protected use is insufficient."  Id. (emphasis added). Kauai Springs has asserted "the public trust doctrine imposes a duty to assess, but does not empower an agency to deny an application simply because it claims it lacks information within its power to obtain, thus shifting the burden to the applicant."  However, contrary to Kauai Springs' assertion, a lack of information from the applicant is exactly the reason an agency is empowered to deny a proposed use of a public trust resource.

Kauai Springs, 133 Hawaiʻi at 173-74, 324 P.3d at 983-84 (original brackets omitted).

With these principles in mind, we address Appellants' contentions.

**B.  The Challenged COLs**

Appellants first contend that the Circuit Court's COLs 5 through 8 are clearly wrong.  These COLs state:

> 5.    There has been no actual evidence to indicate that [Kauaʻi Springs'] property and/or the water that flows through [Kauaʻi Springs'] property, was ever used by Native Hawaiian practitioners.  See In re Conservation Dist. Use Application (CDUA) HA-3568, 431 P.3d 752, 769-70 (Haw. 2018).
>
> 6.    There has been no specific findings of fact and conclusions of law by the Planning Department or the Planning Commission "identifying (1) the scope of valued cultural, historical or natural resources in the relevant area, (2) the extent to which those resources will be affected or impaired, and (3) any feasible actions to be taken by the agency to protect Native Hawaiian rights that are found to exist at the relevant area."  In re Conservation Dist. Use Application (CDUA) HA-3568, 431 P.3d 752, 769-70 (Haw. 2018).
>
> 7.    The reservation of water enumerated by the State Water Code, which generally refers to: (i) the reservation of sufficient water for current and foreseeable domestic, stock water, aquaculture and irrigation activities on lands leased to native Hawaiians pursuant to the HHCA, (ii) the reservation of appurtenant water rights of kuleana and taro lands, and (iii) those traditional and customary rights otherwise assured under the code (See In re W[aiʻ]ola O Moloka[ʻ]i, Inc., 103 Haw[aiʻi] 401, 431 (2004)) will not be affected by [Kauaʻi Springs'] proposed use.
>
> 8.    Therefore, [Kauaʻi Springs'] proposed use is consistent with the four (4) protected trust purposes enumerated by the Hawaii Supreme Court in Kauai Springs, Inc. v. Planning Comm'n of Cty of Kauai, 133 Haw. 141, (2014), to wit: (i) the maintenance of waters in their natural state; (ii) the protection of domestic water use; (iii) the protection of water in the exercise of Native Hawaiian and traditional and customary rights; and (iv) the reservation of water enumerated by the State Water Code.

COLs 5 and 6, when read together with COLs 7 and 8, appear to conclude that Kauaʻi Springs met its burden of demonstrating that its proposed water use will not affect the protected use of water in the exercise of Native Hawaiian and traditional and customary rights, because (1) there was "no actual evidence to indicate that [Kauaʻi Springs'] property, and/or the water that flows through [Kauaʻi Springs'] property, was ever used by Native Hawaiian practitioners"; and (2) the Planning Commission did not properly conduct an analysis under Ka Paʻakai O Ka ʻAina v. Land Use Comm'n, 94 Hawaiʻi 31, 7 P.3d 1068 (2000), consistent with the supreme court's ruling in In re

7

Conservation Dist. Use Application HA-3568, 143 Hawaiʻi 379, 431 P.3d 752 (2018).

So read, COLs 5 through 8 are clearly wrong in their application of the legal standards set forth in Kauai Springs. "If there is a reasonable allegation of harm to one of the uses protected by the public trust" – here, the use of water in the exercise of Native Hawaiian and traditional and customary rights – "then the applicant must demonstrate that there is no harm in fact or that any potential harm does not preclude a finding that the requested use is nevertheless reasonable and beneficial. 133 Hawaiʻi at 173, 324 P.3d at 983 (emphasis added) (citing Kukui (Molokai), Inc., 116 Hawaiʻi at 399, 174 P.3d at 338). "The applicant is obligated to demonstrate affirmatively that the proposed use will not affect a protected use, in other words, the absence of evidence that the proposed use would affect a protected use is insufficient." Id. (internal quotation marks and brackets omitted; some emphasis added) (quoting In re Waiʻola O Molokaʻi, 103 Hawaiʻi at 442, 83 P.3d at 705).

Here, the Planning Commission concluded that "a reasonable allegation of harm was evidenced in the record" in part by testimony that "raised concerns over the resulting harm to Native Hawaiian traditional and customary rights and the maintenance of waters in [their] natural state that may sustain downstream flora, fauna, and riparian and coastal ecosytems." Planning Commission COLs 60-61. The Planning Commission summarized some of this testimony in COL 62 and there is more in the record. The Planning Commission further concluded that "[Kauaʻi Springs] presented no evidence to demonstrate that there is no harm in fact to the exercise of Native Hawaiian and traditional and customary rights or the maintenance of waters in [their] natural state, or that the requested use was nevertheless reasonable and beneficial." Planning Commission COL 63.

Substantial evidence supported the Planning Commission's COLs 60-63 (as well as the related FOFs) and they reflect an application of the correct legal standard. The Circuit Court did not expressly rule otherwise. Instead, the Circuit Court erroneously concluded that Kauaʻi Springs met its

burden based on an <u>absence of evidence</u> that Native Hawaiian practitioners ever used Kauaʻi Springs' property or the water that flowed through it, and <u>the absence of a related</u> <u>Ka Paʻakai</u> analysis. These conclusions do <u>not</u> reflect application of the correct legal standard, as set forth in <u>Kauai Springs</u>.[4/] <u>See also</u> <u>Waiʻola O Molokaʻi</u>, 103 Hawaiʻi at 442, 83 P.3d at 705 (where intervenor Native Hawaiians presented evidence that they traditionally and customarily gathered food and fish along the Kamiloloa shoreline and that a private developer's proposed well and related pumping would significantly reduce groundwater discharge into the ocean, thereby adversely affecting the limu growth and fish populations, the developer "was obligated to demonstrate <u>affirmatively</u> that the proposed well would <u>not</u> affect native Hawaiians' rights; in other words, the absence of evidence that the proposed use would affect native Hawaiians' rights was insufficient to meet the burden imposed upon [the developer] by the public trust doctrine . . . ."); <u>Kukui (Molokai), Inc.</u>, 116 Hawaiʻi at 509, 174 P.3d at 348 (where intervenors contended that a private landowner's proposed diversion of well water could result in a reduction of marine life that would diminish their ability to practice their traditional and customary native Hawaiian gathering rights, even if their access was not impaired, "the Commission's conclusion that 'no evidence was presented' to suggest that the rights of native Hawaiians would be adversely affected erroneously shifted the burden of proof to [the intervenors]"). COLs 5 through 8 are clearly wrong.

Furthermore, because Kauaʻi Springs did not meet its burden under the public trust doctrine, COLs 11 and 12[5/] are, by

---

[4/] We further conclude that although the Planning Commission was required to "make findings sufficient to enable an appellate court to track the steps that the agency took in reaching its decision[,]" <u>Kauai Springs</u>, 133 Hawaiʻi at 173, 324 P.3d at 983, it was <u>not</u> required to conduct a complete <u>Ka Paʻakai</u> analysis in this context, where Kauaʻi Springs failed to meet its affirmative burden to demonstrate that its proposed use would not affect the protected use of water in the exercise of Native Hawaiian and traditional and customary rights, and the Commission denied the Permits on that basis.

[5/] COLs 11 and 12 state:

    11. [Kauaʻi Springs's] proposed use of the water flowing in the Waihohonu Stream is a reasonable, beneficial

extension, also wrong.  We need not reach Appellants' remaining contentions regarding COLs 4, 9, and 10.

### III.  Conclusion

For the reasons discussed above, the January 7, 2020 Second Amended Final Judgment entered by the Circuit Court of the Fifth Circuit is vacated.  The case is remanded to the Circuit Court for entry of judgment in favor of Respondents-Appellees-Appellants Planning Department of the County of Kauaʻi, Planning Commission of the County of Kauaʻi, and County of Kauaʻi, and against Petitioner-Appellant-Appellee Kauaʻi Springs, Inc., and for further proceedings consistent with this summary disposition order.

DATED:  Honolulu, Hawaiʻi, September 23, 2024.


On the briefs:

Mark L. Bradbury,
Deputy County Attorney,
County of Kauaʻi,
for Respondents-Appellees-
Appellants.

Gregory H. Meyers
(Meyers & Meyers LLC)
for Petitioner-Appellant-
Appellee.

/s/ Keith K. Hiraoka
Presiding Judge


/s/ Clyde J. Wadsworth
Associate Judge


/s/ Kimberly T. Guidry
Associate Judge

---

and efficient use of Kauai's water for the benefit of the public.

12.  Given that the Waihohonu Stream is not otherwise being used by any person or entity, there is no cumulative impact of [Kauaʻi Springs's] proposed use on the public trust purposes."